IN THE

# SUPREME COURT

OF THE

## STATE OF NEW-YORK,

IN AUGUST TERM, 1826, IN THE FIFTY-FIRST YEAR OF OUR INDEPENDENCE.

---

FULLER *against* HUBBARD and WILLIAMS, administrators of SMITH, deceased. (*a*)

ASSUMPSIT, commenced in *August* term, 1821; and tried at the *Chenango* circuit, *August* 26*th*, 1823, before NELSON, C. Judge.

The declaration was on the special contract of *Fuller* and *Smith*, as proved upon the trial; and also contained the money counts.

The following facts were in evidence at the circuit: On the 15*th* of *May*, 1812, *Smith*, the intestate, by a memorandum in writing, signed by both parties, agreed to sell *Fuller* 100 acres of land, in *Lisle*, *Broome* county, for 600 dollars, in consideration of 100 dollars then received in part payment. *Fuller* agreed to pay the residue in three yearly instalments, with interest. And upon payment of

*Where, on a contract to pay for, and receive a conveyance of land, the money has been paid, though a conveyance has not been given, the vendee cannot rescind the contract and sue for the purchase money and interest; but must bring his action on the contract as one still subsisting.*

Where one agrees to convey land, on the payment of money, the vendee must not only tender or pay the money; but he must demand a conveyance; and after waiting a reasonable time for it to be made out, must present himself to receive it.

Where the agreement is to convey land in fee simple, a judgment, against the vendor will not, at law, authorize the vendee to rescind the contract. A conveyance without covenants would satisfy such an agreement.

(*a*) This cause was decided in *October* term, 1825.

these sums, at the times mentioned, *Smith* agreed to convey to *Fuller* in fee simple. It was farther agreed, that if the payments were not made at the day, *Smith* might elect to go on with the contract or not. Payments were made by *Fuller* from time to time, to the intestate and the plaintiffs, to the amount of the whole consideration money and interest; the last payment being made to the plaintiffs, on the 12*th* day of *May*, 1819.

The defendants objected that the plaintiff could not recover on the general counts for money had and received; but the objection was overruled.

They also objected that the plaintiff could not recover till he had shewn a deed prepared by him, and tendered to the heirs of *Smith*; and that they had neglected or refused to execute it; or, at least, that a conveyance had been demanded of them, and refused. This objection was overruled.

They also proposed to shew that the plaintiff had been in possession of the land since the contract; and had cut and sold timber to a large amount, which, they insisted, should be deducted from the claim of the plaintiff. This was also overruled; and the jury, under the direction of the judge, found for the plaintiff, the amount of the consideration money and interest.

The defendants had pleaded a judgment of $7000, outstanding against the intestate, recovered in 1815, with a debt upon bond and award, against him; and *plene administravit* except one dollar. To this plea, the plaintiff had replied, praying judgment of assets *quando acciderint*.

*G. C. Bronson*, for the defendants, moved for a new trial, on the ground; 1. That the plaintiff could not recover on the general counts; but was confined to the special agreement. (*Raymond* v. *Bearnard*, 12 *John.* 274. *Clark* v. *Smith*, 14 *John.* 326. 1 *Chit. Pl.* 342. *Towers* v. *Barrett*, 1 *T. R.* 133. *Power* v. *Wells*, *Cowp.* 818. 4 *Mass. Rep.* 504. *Weston* v. *Downes*, *Doug.* 23. *Hunt* v. *Silk*, 5 *East*, 449. *Caswell* v. *The Black River C. & W. Manufac. Co.* 14 *John.* 453. *Taylor* v. *Hare*, 4 *B. & P.* 260.

2 *Ph. Ev.* 64. 1 *Wheat. Selw.* 79. 2 *Com. Cont.* 56. *Sugd. L. V.* 206.) He should have elected one, and cannot go on both. (7 *T. R.* 181. *Linningdale* v. *Livingston*, 10 *John.* 36.)

2. He could not sustain an action, without having first tendered a deed for execution, or at least having demanded a deed from the heirs. (*Sugd. L. V.* 182, 296, *Phil. ed.* 1820. *Parker* v. *Parmele*, 20 *John.* 130. *Phillips* v. *Fielding*, 2 *H. Bl.* 123. *Greenby* v. *Cheevers*, 9 *John.* 126.)

3. The judge adopted an improper rule of damages; and rejected proper evidence affecting this question. (4 *B. &. P.* 262, per *Heath, J.* 1 *T. R.* 136, per *Buller, J. Hopkins* v. *Lee*, 6 *Wheat. Rep.* 109. 10 *Ves.* 510-11, per *Mast. Rolls, in Dyer* v. *Hargrave.*)

*J. A. Collier*, contra. The contract on the part of the plaintiff was fully performed. After the money was paid, he was, by the terms of his contract, entitled to a deed; and no demand was necessary. (*Shackleford* v. *Barrow*, 2 *Bay's N. C. Rep.* 91. *Baker* v. *Bulstrode*, 1 *Mod.* 104. *Pincke* v. *Curteis*, 4 *Br. Ch. Rep.* 332. *Heard* v. *Wadham*, 1 *East*, 627, *Abbott, arg. Sweitzer* v. *Hummell*, 3 *Serg. & Rawle's Rep.* 228. *Lawes' Plead. in Assumpsit*, 246. *Com. Dig. Pleader* (*C.* 75.) *Utica Bank* v. *Gieson*, 18 *John.* 485.)

A large class of authorities establish the distinction between cases where the conveyance and the payment are to be simultaneous; or, in other words, where the covenants are dependent; and where they are independent. (*Green* v. *Reynolds*, 2 *John. Rep.* 207. *Jones* v. *Gardner*, 10 *John.* 266. *Parker* v. *Parmele*, 20 *John.* 130-5. *Heard* v. *Watts*, 1 *East*, 619. 1 *Saund.* 320 c. *M'Crady's exrs.* v. *Brisbane*, 1 *Nott & M'Cord's S. C. Rep.* 104.) But even in these cases no demand has been held necessary. A performance, or offer to perform, by the vendee, is enough. The late case of *Fairfax* v. *Lewis*, (2 *Rand. Virg. Rep.* 20, 35,) will be found to sustain us throughout.

We submit whether the payment was not a sufficient demand; and whether this, and waiting a reasonable time, would not satisfy the rule, if a demand was necessary.

But if a demand be necessary of the promissor, it is not so of his heirs. The law will not require us to know who they are, or to find them out. There is a privity between them and the administrators; and payment or notice to the latter is equivalent to a payment and notice to the former.

But the property was encumbered with a judgment of $7,000. This disqualified the promissor and his heirs from conveying; and dispensed with the necessity of a demand, if it had otherwise been necessary. (*Seaward* v. *Willock*, 5 *East*, 198, 202. *Sugd. L. V.* 164, 5, *Am. ed.* 1820. *Greenby* v. *Cheever*, 9 *John.* 126. *Gillet* v. *Maynard*, 5 *John.* 87-8. *Judson* v. *Wass*, 11 *John.* 527. *Tucker* v. *Woods*, 12 *id.* 190. *Duke of St. Albans* v. *Shore*, 1 *H. Bl.* 279. *Gazley* v. *Price*, 16 *John.* 269. *Ketchum* v. *Evertson*, 13 *id.* 364. 2 *Chit. Pl.* 125, note (*i*).)

If there could be no performance, the plaintiff had a right to rescind the contract; and recover back the money on the general counts for money had and received.

The offer to shew the cutting and conversion of timber was a mere offer to set off damages done by a trespass. We had no right even to enter, till a conveyance; nor, if we had the vendor's consent to enter, could we have cut timber. Our liability sounds in tort. A claim of this sort cannot be set off. (*Duncan* v. *Lyon*, 3 *John. Ch. Rep.* 358, *and the cases there cited. Livingston* v. *Livingston*, 4 *id.* 292.) An action for use and occupation would not lie. (*Smith* v. *Stewart*, 6 *John.* 46.)

*Staats* v. *The Exrs. of Ten Eyck*, (3 *Caines' Rep.* 111, 114,) lays down the true rule, as to the measure of damages. It should be the same as if we had received a conveyance, with covenants, and been ejected for defect of the vendor's title. The measure, then, is the consideration paid, with interest. The cases on this head will be found collected in 2 *Wheat. Rep.* 63 to 65, *note.*

We are liable to be ejected by the heirs. Then is the time to liquidate the claim for the mesne profits of the estate. (*Murray* v. *Gouverneur*, 2 *John. Cas.* 438.)

*Bronson*, in reply. The objection as to the out-standing judgment, was not made at the trial. But it cannot be sustained, if it had been made in season. The promise is to give a deed good in form; and the vendee cannot object a mere incumbrance. (*Van Eps* v. *The Mayor, &c. of Schenectady*, 12 *John*. 436. *Nixon* v. *Hyserott*, 5 *John*. 58. *Sedgwick* v. *Hollenback*, 7 *John*. 376. *Stanard* v. *Eldridge*, 16 *John*. 254.)

*Curia*, per WOODWORTH, J. The plaintiff was not entitled to recover under the general counts. The special contract is still subsisting; and the remedy of the plaintiff is on the contract. (*Clark* v. *Smith*, 14 *John*. 326.) That the plaintiff had no right to rescind, follows from the conclusion, (which we have come to on another point in the cause,) that the outstanding judgment admitted by the pleadings, was no obstacle in the way of performing the promise to convey according to its terms. The payments were made by the plaintiff upon the foot of the special contract. Every thing has gone on, for a series of years, upon the supposition that the agreement was valid and subsisting.

It is unnecessary to consider the question of damages; as we think the action cannot be sustained on the contract, the purchaser not having put the vendor or his heirs in default.

In this case, it was necessary for the plaintiff to show, at least, that he had demanded a conveyance from the heirs of *Smith*, the intestate; and that then, after waiting a reasonable time for making out and executing it, he had offered to receive it. The English law is peculiarly strict. By this, it seems, the vendee, who sues for a breach of the contract to convey, is required, not merely to shew payment of the purchase money; he must also prove the preparation and tender of a conveyance ready for execution. Till this is done, the vendor is not put in default. In *Baxter* v. *Lewis*, (*Forrest's Exch. Rep.* 61-2,) on a bill filed by the vendor of land against the purchaser, for a specific performance, the defendant was decreed to pay the purchase money. He neglected to do so, and was attached. A motion being made to set aside

UTICA,
Aug. 1826.

Fuller
v.
Hubbard.

the attachment, on the ground that, as the vendor had not prepared and tendered a conveyance, the defendant was not bound to pay ; and the attachment was, therefore, premature ; *Pemberton,* for the plaintiff, said, " It is the duty of the purchaser to make and tender a conveyance. The vendor is never called upon to do so." The court denied the motion, thinking it was incumbent on the defendant, " to *prepare* and *tender* the conveyance, and pay the purchase money." In *Knight* v. *Crockford,* (1 *Esp. N. P. Rep.* 190,) on an objection by *Adair,* sergeant, that the plaintiff, a purchaser, could not recover on the contract in question, (which consisted of a promise by the plaintiff to pay for, and of the defendant to convey real estate,) because he had not shewn the preparation and tender of a conveyance to the defendant ; *Eyre,* C. J. did not question that the objection was according to the general rule ; but distinguished the case, saying the defendant had incapacitated himself to convey by selling to another, which rendered a strict performance on the part of the plaintiff unnecessary.

Mr. *Sugden* declares the rule of *Baxter* v. *Lewis* to be the settled rule of the profession in *England ;* and notwithstanding some *dicta* which he mentions to the contrary, he still infers that the purchaser, and not the vendor, ought to prepare and tender the conveyance. (*Sugd. L. V.* 181-2, *Am. ed.* 1820.) *Sugden* agrees that the contrary was the general rule when the simplicity of the common law reigned, and possession was the best evidence of title ; but upon the modifications of estates, unknown to the common law, which resulted in the difficulties surrounding modern titles, the more convenient rule which he mentions had grown up among the conveyancers. (*b*) This doctrine

(*b*) The English practice in this particular, will further appear by the following sketches, selected from different parts of *Preston's Essay on Abstracts of Title,* a late *London* publication, in three volumes. I have also extracted a very general outline of the abstract upon which *Preston* treats. I have done so, not only because it is curious, as shewing the extensive and laborious duty of the *English* conveyancer ; but because it will not be without use, in suggesting to the New-York lawyer all the heads which can occur in the more simple abstracts of this state.

of *Sugden* is mentioned with approbation by the late chief justice *Spencer*, in *Hudson* v. *Swift*, (20 *John. Rep.* 27 ;) and the court decide in that case, that, to put the vendor in default, and entitle the vendee to recover back part of the

" When land, or other property, which does not pass by mere delivery, but is held by a title, depending on documental evidence, is sold, it is the duty of the solicitor for the vendor to prepare an abstract of the title ; and of the solicitor for the purchaser to compare the abstract with the deeds, wills, &c. and to call for evidence of the facts which are stated as relevant to the title ; and to take care that the abstract contains a correct and faithful statement of all the circumstances disclosed by the deeds, wills, &c., or depending on extraneous facts, as *marriages burials, baptisms, possession, descents, disseisins,* and the like, and which are material to the title.

The general practice is to produce the deeds, &c. to the purchaser's solicitor, at the office of the vendor's solicitor. But wherever the documents of the title are, the purchaser must procure some person on his behalf, to compare the abstract with the evidence of title.

When the abstract is thus prepared, and, if necessary, corrected, it is generally submitted to the conveyancer or counsel. Few solicitors take on themselves the heavy responsibility of advising on a title, if implicated with any nicety, or giving occasion to any question of difficulty.

Indeed, it is a subject of surprise, that more titles, accepted under the advice of solicitors, do not prove defective, when the most experienced and skilful conveyancers, and learned practitioners, feel so much difficulty in discharging their arduous duties.

No one can comprehend the labour which a conveyancer must undergo, unless he has had actual experience or observation of the difficulties to which he is exposed, of collecting and combining facts, expounding intention, and applying abstruse rules of law.

The conveyancer, of all the other lawyers, is in a situation to be most oppressed by labor and by difficulty ; and ought to be as learned, perhaps, considering his duties, more learned in the law, than the members who are engaged in any of the other departments of the profession.

It is his province to consider the title, to advise on the abstract : to point out the defects, if any, which exist in the evidence of the title, and the doubts which arise on the construction, or the sufficiency of any of the deeds or wills, or the doubts in which the law, as it applies to the facts, or the language of the instruments of title, is involved ; also the means by which these defects may be supplied, or those doubts may be removed ; also on the mode of conveyance proper to be adopted, in order to complete a title in the purchaser." (1 *Preston on Abstracts of Title,* 1 to 3.)

" The practice in preparing abstracts, seems to have taken a turn by no means favourable to the interest of purchasers. The professional emoluments, arise from preparing the abstract, and not from examining it. It is now prepared by the solicitor for the seller. Formerly it was prepared by the solicitor for the purchaser ; and this, as far as the point of accuracy

purchase money, which he had paid in advance, he must tender the residue, and demand a conveyance. There is, then, something more to be done than the simple payment, or the tender of the purchase money. A conveyance must

is in question, is the more eligible mode, since the deeds were left with the purchaser's solicitor, and they were abstracted at leisure, and he had sufficient time to take care that all the material parts were inserted in the abstract.

It is to be feared, that now, in some instances at least, sufficient time is not allowed, or if allowed, cannot be devoted by the solicitor for the purchaser, to read over and compare the voluminous deeds constituting the evidence of a title, which has experienced a frequent change of ownership, or been fettered by various incumbrances. To understand one deed thoroughly, and all its various operations, combined as they may be with numerous external circumstances, will sometimes engage the attention of those most skilled in the subject, for the greater portion of a day, and require frequent recurrence to the subject before the contents can be perfectly comprehended. What then can be expected from a person who is at once to wade through deeds, wills, &c. which run to the length of several hundred skins, and a short abstract of which alone, comprises from fifty to a hundred pages." (1 *Preston on Abstracts*, 200, 201.)

[*Objects of an abstract.*] "The object of every abstract, is to enable the purchaser, or his counsel, to judge of the evidence deducting the title, and of the incumbrances affecting the title.

Every title involves in itself the question of legal and beneficial ownership.

On the one hand, it is in vain that there is a good title at law, if that title be bad or defective in equity.

On the other hand, it is not sufficient that there is a good title to the legal estate, or to the equitable estate, if it be encumbered with *judgments, legacies, debts to the crown,* or *other charges,* to its value ; for, in proportion to the extent of such incumbrance, will there be a reduction in the actual value of the interest of the vendor.

In short, every abstract should describe whatever will tend to enable a purchaser, or his counsel, to form an opinion of the precise state of the title at law, and in equity, together with all chances of eviction, or even of adverse claims." (1 *Preston on Abstracts*, 41, 2.)

[*Form of the abstract.*] " Every abstract should have a head or title.

This part of the abstract should propound the names of the persons, whose title is to be considered, the estate, or degree of interest they have, and the lands to which the attention is to be directed, and the names of the parishes and county in which the lands are situate ; and, as far as practicable, connect the modern with the ancient description of the parcels.

The form may be to this effect :

An abstract of the title of A. B. to the fee simple and inheritance of the manor of         in the county of

be demanded.  Nor would this alone appear to satisfy the principle of the rule.  A reasonable time should be allowed to the vendor to prepare the conveyance.  The purchaser not having himself prepared it, (which he may do)

Or a farm, &c. or a close, &c. in the parish of, &c. containing, &c. formerly parcel of a farm called

Or to a farm, &c. formerly called          , and now called

When the lands are held *for lives* or for the residue of a *term of years*, then the head of the abstract should be in this form :

An abstract of the title of          to a farm, &c. called situate in, &c. for the lives of          ; or for the residue of a term of years ; or the residue of a term of years now determinable on the death of          ".  (*Preston on Abstracts*, 36.)

" In continuing the abstract, the attention is occasionally turned to deeds (*mere agreements*, to be abstracted in the same manner as deeds.)

*First*, to deeds.  I. The date  II. The *style* or *character* of the deed ; as by *indenture* of *bargain and sale*, &c.  III. The names of the parties. IV. The recitals.  V. The testatum, or operative clause ; and this clause is again subdivided into several parts, viz. 1. The part which expresses the consideration.  2. The name of the grantor, request, &c.  3. The operative words of grant ; and 4. The name of the grantee.  5. In some cases, a reference to a lease for a year, as in releases founded on a previous lease for a year.  6. The parcels with their description, and either with or without an *exception*.  7. The general words, and the clauses of reversion, estate, deeds, &c.  8. The *habendum*, or clause limiting the estate.  9. In some cases a reddendum.  10. In some cases, a declaration of uses.  11. In some cases, a declaration of trusts.  12. In some cases a condition, or conditional limitation, by way of shifting or springing use ; or a clause of agreement for redemption in equity ; or some other special agreement which may affect the title in equity, if not at law.  13. Powers.  14. Covenants for the title, or other covenants which may affect the title, and either with or without exceptions introduced into these covenants.  15. The execution.  16. The attestation.  17. The receipt.

*Secondly*, the attention is occasionally turned to records, as fines and recoveries.  *Thirdly*, to acts of parliament.  *Fourthly*, to commissions of bankrupt.  *Fifthly*, to wills and their probates.  *Sixthly*, to administrations.  *Seventhly*, to decrees.  *Eighthly*, to judgments."  (1 *Preston on Abstracts*, 49.)

" It is the duty of the conveyancer to consider the deduction of title ; the evidence by which it is supported ; the defects, if any, which appear in the title, or in its evidence ; and to call for such information as shall appear necessary to elucidate the real state of the facts ; and also for such documents as, in the nature of the case, may exist, although no notice, or only very slight notice be taken of them in preparing the abstract." (*Preston on Abstracts*, 208.)

Fuller
v.
Hubbard.

he shall not be allowed to retire immediately, and bring his action; but should present himself to receive the conveyance, which he has thus required to be furnished. Deliberation and advice of counsel may be necessary in settling its terms. The framing and execution of modern conveyances, even with us, where the titles to real estate are much less complicated than in *England*, are not like the payment of money, or the delivery of a chattel. I admit the general rule to be, as contended by the counsel for the plaintiff; that where a party engages to do any act, and a demand is not a part of the contract, the bringing of the action is, in itself, a sufficient demand. Such an important transaction, however, as the assuring of a title to real estate, under the modern system of conveyancing, is an exception to that rule.

Clearly, the judgment recovered against *Smith* is no ground, in a court of law, for rescinding the contract. The agreement was to convey in fee simple. A conveyance is good and perfect, without warranty or personal covenants. Such a conveyance will satisfy the terms of this contract. The judgment is, of itself, no transfer of title. It does not destroy the seisin of *Smith*, or his heirs, nor take away the capacity to convey. (5 *John.* 58.   7 *id.* 380.   13 *id.* 363. 20 *id.* 133.   12 *id.* 443.   9 *id.* 126.)

A new trial must be granted, with costs to abide the event.

New trial granted.

"This may appear to be a duty attended with little or no difficulty; but it will be found to involve within its compass the knowledge of all the rules of real property, and all the niceties with which these rules abound." (*id.*)

"The conveyancer is entitled to be satisfied, not only by an inspection of documental evidence; but verbal information, and even affidavits as to extraneous facts." (*id.* 254.)