By the Court.
Bosworth, J.
—One of the questions presented by this case, is this: Were the offer of Jesse Hoyt, on the 1st of August, 1855, to pay to Mr. Stevens the four checks of $4,500 each, with interest, and expenses of protest, or whatever might be due; and a cotemporaneous demand from Stevens of a bill of sale, acts, which can be regarded as being, in law, a tender or offer to pay to the defendants and a demand of them, of a bill of sale? The question is not whether the $12,000, advanced as part payment has been forfeited, nor whether the plaintiff yet has it in his power to compel a transfer of the boat to be made, on paying or offering to pay what may be due.
But the practical question is, has he done enough to put himself in a position to say, that the defendants have refused to perform the contract on their part, and given him a right to treat the contract as rescinded, and to recover back the $12,000 which had been paid ?
By the contract of June 9th, 1855, the defendants agreed to sell for $32,000, of which $12,000 was to be paid in cash, on or before the fifteenth of that month, and the other $20,000 in four months, and its payment satisfactorily secured. That being done, a bill of sale was to be delivered on payment of the $12,000 on the said fifteenth of June.
On the 16th of June, 1855, Charles Hoyt, the purchaser, having failed to perform the agreement of the ninth of June, the defendants received of him $12,000 cash, and his four checks of that date for $4,500, each, dated the sixteenth and payable on the nineteenth, and deposited with Mr. Stevens a bill of sale of the boat, and agreed with Hoyt that Stevens might deliver to him the bill of sale when Hoyt should have “paid his said four checks for $18,000, eighteen thousand dollars.”
These checks would mature on the twenty-second, and of course Hoyt, by paying eighteen thousand dollars, within six days from the sixteenth of June, would be entitled to a delivery of the bill of sale, and would have a right to demand it, in that event, of Stevens.
*58 The bill of sale was put in the hands of Stevens, under the agreement of the sixteenth of June, to be delivered on payment of the checks at their maturity. Hoyt having failed to pay the checks when due, Stevens did not, by force of that agreement become the agent of either party, in such sense that a subsequent tender of payment could be made to him by the plaintiff, or by Charles Hoyt, or that a subsequent demand of payment could be made of him by the defendants. His agency was limited to the delivery of a bill of sale on payment of the checks at maturity. They not being then paid, he could not enlarge the time of payment, nor accept payment on a day subsequent, nor was he an agent of the defendants, in such sense that he could affect them by his acts done with reference to a new ór altered state of facts.
If any doubt as to this point could exist, had nothing subsequently occurred to affect his power to receive payment and thereby bind the defendants, that doubt is removed, because they had directed him before the tender was made not to receive payment, but if offered, to refer the person offering it to Horace E. Clark, and the person who made the tender relied upon, was so informed, at the time the tender was made.
It was then the duty of the plaintiff either to have made a tender to Mr. Clark or to the defendants. Hone was made to either.
Hothing was tendered to either defendant, nor was any act or acts done, of a character equivalent in effect, to an offer to pay the checks to the defendants.
The plaintiff, to' succeed in this action, must establish that he offered to pay the defendants all that was due, and demanded of them a bill of sale, before suit brought. He must do this before he can be exonerated from taking the boat and making full payment, or place himself in a position to have the right-to elect to treat the contract as abandoned, and recover back the $12,000 paid.
Clear proof of the defendants’ default is an essential prerequisite to such a right of action. (Green v. Green, 9 Cow, 46 to 51.)
Even if it be conceded that payment of $18,000 and interest, and expenses of protest, could have been rightfully made on the first of August, and that no more need then have been paid to *59 entitle the plaintiff to a bill of sale, ana that a refusal then, to receive that amount and thereupon to deliver a bill of sale, would have enabled the plaintiff to maintain this action, no valid tender of payment was made, nor was any demand of a bill of sale made, which can affect the defendants.
Mr. Stevens was not authorized to deliver the bill of sale, except upon the condition that the four checks were paid when due. That the plaintiff might not be misled, he was notified that Stevens had been forbidden to receive payment. He made the tender he did make with that knowledge. He was referred to H. F. Clark. He then had his election to seek him, and treat him as the representative of the defendants who had referred to him, or to seek the defendants personally.
The defendants were not bound to seek the plaintiff. Even if they had waived strict performance as to time, they had not waived substantial performance, in fact, nor agreed to rescind. To put an end to the contract, and to the plaintiff’s obligation as assignee of the purchaser, to pay the balance due, the defendants must be shown to have refused to receive what was due and to deliver a bill of sale. This is not shown. They have not refused to do either; nor have they done any thing which dispensed with the necessity of an offer to pay them, and of demanding of them a bill of sale before suit brought. (Ellis v. Hoskins, 14 J. R., 363 ; Green v. Green, 9 Cow., 46; Fuller v. Hubbard, 6 Cow., 13; Fuller v. Williams, 7 Cow., 53.)
The written memorandum of the sixteenth of June states that the boat was sold for $32,000, “of which” the defendants had “received of him (Charles Hoyt) $12,000 in cash, and his four checks of this date, payable on the nineteenth instant, for $4,500, each,” &c.
Were this the only written agreement on the subject, it would not import that the cash and checks would be full payment; for it states expressly that the price is $32,000, “of which” $30,000 had been received in the manner specified. How and when the other $2,000 was to be paid might be shown by parol, if the agreement respecting it rested wholly in parol. But a previous writing states that it was originally agreed that, for the ■ $2,000, and for the amount of the checks also, a credit of four months was to be given on the payment being satisfactorily *60 secured. In the absence of any admission in the pleadings to the contrary, it would not be an unnatural inference that, on payment of the $18,000 when the checks matured, the other $2,000 was to be paid at the end of the four months originally stipulated, and that security for its payment was waived.
But the answer admits that payment of the $18,000, provided it was paid when the checks were due, was to be full payment. But it was to be full payment only in the event it was then paid. The defendants offered to show that such was the actual agreement. The evidence was rejected as being in conflict with the terms or clear legal import of the agreement, evidenced by the written memorandum, of the sixteenth of June.
What has been said, is sufficient to show that there is nothing in the terms or legal import of that paper, in conflict with the fact offered to be proved.
As proof of such a fact would not vary the terms or meaning of any agreement which that paper imports; .the evidence offered was improperly rejected.
The verdict must be set aside,and a new trial granted, with costs to abide the event.
Woodruff, J.
—First. If the letter of instructions given by the parties to the cashier of the Mechanics’ Banking Association were to be regarded as the agreement of the sixteenth day of June mentioned in the complaint,-and as such to be construed, as so far covering the whole subject matter, as to preclude parol proof of any terms or conditions not inserted therein; and, therefore, to be held to express the whole agreement of that date in modification of the previous written contract, it might still be read in connection with such previous contract of the ninth of June, and also in connection with the four checks described therein, and when so read, it does not, in my opinion, entitle Charles Hoyt or his assignee to have the bill of sale delivered, unless the checks, mentioned therein, are paid at maturity.
Read in connection with the checks, its import is that the bill of sale is to be delivered to Charles Hoyt when he shall have paid his four checks, which are “payable on the 19th instant.” According to the very tenor of the instrument, it was upon payment of sums therein declared to be payable on a day named, *61 that delivery was to be made. The omission to pay on the day expressed for the payment, or at the end of the days of grace, was a clear breach of the agreement, and a violation of the condition upon which the bill of sale should be delivered.
Read in connection with the agreement of the ninth of June (if it be assumed as already suggested to embrace the whole agreement), it imports that a sale of the boat had been made for $32,000, of which $12,000 had been paid, and that the defendants had agreed that instead of $20,000, satisfactorily secured by notes payable at four months, they would accept $18,000, payable on the nineteenth instant. As the defendants, under either agreement, were to have ample security, it is possible that time was made the very consideration and inducement to the relinquishment of the $2,000. Under both agreements, the defendants were entitled to $12,000 cash. Under both, the payment of the residue was to be satisfactorily secured (i. e., in the one case by notes satisfactory to the defendants, in the other by a deposit of the bill of sale in escrow); so that there remained no other ground or motive for the acceptance of the $18,000 instead of the $20,000, but the actual payment within the time specified, viz., on the nineteenth.
And this is, I think, the true intent and meaning of the parties as disclosed by the two papers read together; and this appears to me as plainly apparent, as it would be, had the memorandum only directed the cashier to deliver the bill of sale, “if he (Hoyt) shall pay his said four checks according to their tenor.” Payment of a check or note according to its tenor, is what is meant when parties speak of, and provide for the payment of a note or check running to maturity, according to the ordinary use of language.
In my opinion, therefore, the fair and proper construction of the memorandum of the sixteenth of June, forbids the claim asserted by the plaintiff, that he was entitled to have the steamboat for the further payment of $18,000 only, whenever it might suit his convenience or pleasure to pay it, and whether at the maturity of the checks or not. On the contrary, I think that upon the non-payment of the checks the defendants were exonerated from any obligation to receive less than the full consideration, $32,000, mentioned in the memorandum as the consideration of the sale; and that the privilege of an abatement from the price *62 which Hoyt had obtained was gone; not as a forfeiture, for no right was lost, he was bound for the whole already, but he, by not paying the checks, failed to realize the benefit of a sacrifice which the defendants had consented to make, in consideration of an almost immediate payment, viz.: on the nineteenth instant.
2. But that letter of instructions is not to be deemed or taken as the agreement between the parties in the absolute sense above assumed, not only because it makes no provision respecting the residue of the consideration as suggested by my brother BosWORTH (with whom I fully concur), and therefore, does not on its face purport to cover the whole subject matter of the contract, but also because it is not so set up, declared upon nor treated by the pleadings on either side; and its purpose and object, appearing as well in the pleadings, as upon the face of the paper itself, were to furnish instructions to Mr. Stevens (the cashier), and exhibit the conditions on which he might deliver the bill of sale. An agreement is stated in the complaint, which according to the plaintiff’s allegations covered all the particulars of the modification of the previous contract, and it is alleged that in pursuance of that" agreement Charles Hoyt paid $12,000 and gave his checks, and the defendants delivered a bill of sale together with an instrument in writing signed by them and Hoyt to the cashier.
The answer admits the delivery of the bill of sale and instrument to the cashier, but avers that the agreement m pursuance of which, this was done, embraced terms and conditions other than those alleged in- the complaint.
Under such an issue, made by express and specific averments in the pleadings, I think it was competent for the defendants to show what was the real agreement between the parties, in pursuance of which the written instructions to the cashier were given, and that the proofs offered did not contravene any stipulation which the parties had reduced to writing, even for the limited object for which those instructions to the cashier were given.
The instrument delivered to the cashier contained all that was necessary for his guidance, and was delivered for his instruction; while that and the bill of sale were left as security to Mr. Hoyt that he should receive the bill of sale if the checks were paid: whether anything and what had been agreed in *63 respect to the residue of the $32,000; and what was to follow, if the checks were not paid according to their tenor, are matters in respect to which the instrument is silent, and the purpose which it was to serve did not require that it should contain anything on those subjects. Mr. Stevens’ duty was defined, and that was all that was material to the object of the paper.
I concur in the opinion that the verdict should be set aside and a new trial granted, with costs to abide the Court.
Ordered accordingly.
Pierrepont, ¿I., dissented.