1834.

Vroom
v.
Ditmas.

---

## VROOM *vs.* DITMAS and others.

Where D., the owner of premises which were subject to the encumbrance of a mortgage given by a previous owner, gave two mortgages to the complainant, and afterwards a judgment was recovered against D. in favor of V. H., and the premises were then sold under a statute foreclosure of the prior mortgage, and V. H. afterwards took a conveyance from the purchaser, and then conveyed the premises to S. with warranty ; *Held,* that the purchase of the premises by V. H. under the statute foreclosure and the subsequent conveyance with warranty, operated as a release and extinguishment of his right to redeem the premises by virtue of his judgment ; and that S. took the whole legal and equitable title to the land, subject only to the right of the complainant to redeem by virtue of his mortgages, if the amount due thereon was not paid.

The effect of a statute foreclosure is to transfer, to the purchaser, the right of the mortgagee to the extent of his claim or interest in the mortgaged premises for the security of his debt, and also to transfer to the purchaser so much of the equity of redemption as is not vested in subsequent mortgagees, nor bound by the lien of subsequent judgments.

A subsequent mortgagee who seeks to redeem from the purchaser under a statute foreclosure of a prior mortgage, is not bound to pay the costs of such foreclosure ; which foreclosure as to his rights is wholly inoperative.

Where the holder of a mortgage against D. which was not yet due, offered to make a large discount if payment should be made immediately, and D. not being able to procure the money himself, agreed with the complainant that he should raise the amount and take an assignment of the mortgage to himself, and should have a part of the discount for his services in obtaining the money ; *Held,* that such agreement was not usurious, and that a mortgage subsequently given by D., which included the complainant's share of such discount, was valid.

If the security upon which a suit is instituted is a mortgage or other specialty, the defendant cannot avail himself of a defence of usury, under a general answer denying the complainant's right, as claimed by the bill. But the defence of usury must be distinctly set up in the plea or answer of the defendant; and the terms of the usurious contract must be distinctly and correctly set out. The proof must also correspond with the allegations in the plea or answer.

The owner of the premises, against which an usurious mortgage is attempted to be enforced in the court of chancery, must himself set up the defence of usury in his answer. He cannot avail himself of a defence set up in the

answer of a co-defendant from whom he purchased, who has no interest in or lien upon the mortgaged premises, and who is not a necessary party to the suit.

As a general rule, a party coming into a court of equity to redeem, pays costs to the defendant, although he obtains the relief prayed for; yet if the defendant improperly resists the claim of the complainant to redeem, he will be refused his costs, and may be compelled to pay costs to the adverse party, in the discretion of the court.

THIS was an appeal from the decree of the vice chancellor of the seventh circuit. In March, 1811, Elkanah Watson, who was the owner of about 80 acres of land in the county of Seneca, conveyed the same to J. Arnold & S. Day, and took back a bond and mortgage to secure the payment of the purchase money. Arnold & Day afterwards conveyed the land to W. Brundage, subject to the mortgage. In March, 1818, Brundage conveyed to Abraham Ditmas, one of the defendants in this suit, and took back a bond and mortgage to secure the purchase money; Ditmas agreeing to pay off the balance due on Watson's mortgage, which was to be allowed towards such purchase money. On the 12th of October, 1818, Ditmas and wife mortgaged the land to Peter Vroom, the complainant, to secure the payment of $312, and interest; and, on the fifteenth of the same month, they gave to the complainant another bond and mortgage upon the same premises to secure the payment of $690 in one year, with interest from the 10th of November then next. There being about 35 dollars remaining due upon the mortgage to Watson, that mortgage was foreclosed, against Ditmas and wife, by a statute foreclosure; and upon the sale, on the 24th of June, 1820, J. W. Bacon became the purchaser, for the price or sum of twenty dollars which was the highest sum bid for the same. A deed was executed to Bacon, under the statute foreclosure; and on the same day he conveyed the premises to the defendant, W. C. Van Horne, by a quit claim deed, for the nominal consideration of one dollar. The purchase money in fact paid, however, upon such conveyance to Van Horne, was 85 dollars; the amount due on the Watson mortgage and the costs of foreclosure. At the time of the statute foreclosure, Van Horne had a judgment against Ditmas for $86,40, recovered in the Seneca county common

*Margin note: 1834. Vroom v. Ditmas.*

*Margin note: August 19.*

pleas, in July, 1819, which was a lien upon the equity of redemption of Ditmas in the premises. In February, 1822, Van Horne conveyed the land to Peter Smith for the sum of $1060, with warranty. The complainant, as a subsequent mortgagee whose mortgages were not affected by the statute foreclosure of the prior mortgage to Watson, applied to Smith and to Van Horne to redeem the premises. And he offered to pay not only the amount due on the prior mortgage, but also the costs of such foreclosure; but his application was refused. The complainant thereupon filed his bill in this cause, against Ditmas and wife, Van Horne, and Smith, setting forth these facts, and praying that the defendants, or some of them, might be decreed to pay the amount due on his two bonds and mortgages, or that he might be permitted to redeem.

Ditmas and wife did not answer, but suffered the complainant's bill to be taken as confessed against them. The defendant Smith put in an answer, claiming to be the owner of the premises as a bona fide purchaser thereof from Van Horne who conveyed to him with warranty. Van Horne also put in an answer, claiming a lien on the premises by virtue of his judgment against Ditmas. He admitted the execution of the several bonds and mortgages, deeds and conveyances mentioned in the complainant's bill, but insisted that the $690 mortgage to the complainant was usurious and void, $100 having been included therein for the extra interest or premium on the loan or forbearance of $590 for one year. Replications were filed to these answers, and the proofs in the cause were taken, and closed. Subsequently to the closing of the proofs, the defendant Peter Smith died, and the suit was afterwards revived against his personal representatives, and his heirs and devisees. The cause having been heard before the vice chancellor, upon pleadings and proofs, he decided and decreed that the $690 mortgage was usurious and void, and that the mortgaged premises should be released from the same; that the $312 mortgage was a valid lien on the premises, and that the complainant had a right to redeem the same upon paying the balance due on the Watson mortgage, with interest, and the costs of foreclosure under the statute. A reference was therefore ordered to ascertain the amount

due on the Watson mortgage ; upon which reference the master was directed to credit the amount, including interest and the costs of the statute foreclosure, to the defendant Van Horne, and to charge him with the rents and profits of the premises from the time he took possession, after deducting from such rents and profits the value of all permanent beneficial improvements made by him. And it was decreed that the balance, if any, which should be found due on the Watson mortgage should be paid to Van Horne. The master was also decreed to ascertain and report the amount due to the complainant on his $312 mortgage ; and the defendants were to be at liberty to pay to the complainant the amount reported due, and upon such payment the complainant was decreed to release to the defendants all claim upon both of his mortgages. The decree further directed, that if the defendants should omit to pay to the complainant the amount reported due on the $312 mortgage, upon payment by the complainant of the balance, if any, reported to be due to Van Horne on the Watson mortgage, the mortgaged premises should be sold by a master ; that out of the proceeds of the sale, the master should pay the amount due on the $312 mortgage, and bring the surplus monies into court ; and that neither party should recover costs as against the other. The complainant thereupon appealed to the chancellor, from the whole of such decree, except so much thereof as allowed the validity of the $312 mortgage and decreed a foreclosure thereof.

*G. Wood,* for the complainant. The sale was by collusion and with intent to defeat the rights of the complainant. There was no usury in the $690 mortgage. It is not usurious to take up a chose in action at a discount. The defendant Ditmas has not answered, or set up the usury. He profited $500 by the discount allowed on the purchase of the Brundage mortgage by the complainant. Where an instrument is susceptible of two constructions, the one honest and the other usurious, the court will give it the construction which relieves it from the taint of usury. (*Archibald* v. *Thomas, 3 Cowen,* 284.) If there was usury in the case, the answer setting it up is

defective. There must be a loan of chattels or monies to constitute usury. The answer speaks of a previous indebtedness, not of a present loan. Where there is a previous indebtedness, the course is only to deduct the usurious premium, not to vitiate the transaction. Here the proof is of one usurious transaction, and the pleadings set up another. In an action of debt upon a bond, if the bond is infected with usury, the defendant must plead the usury specially. (*Bull. N. P.* 224. *Co. Litt.* 48, *a.*)

The owner of a farm subject to a usurious mortgage, cannot authorize his vendee to litigate the question of usury in the mortgage. The benefit of the objection of usury can only be taken by a party to the transaction. (*Cro. Eliz.* 445.) Wherever there exist defects which go to defeat a transaction, but which may be waived, the parties thereto alone can take advantage of the objection. (8 *John. R.* 361. 13 *Id.* 378. 1 *Gall. R.* 419.) So where a new note is given to a third person, including usury of an old note, the objection cannot be set up against him. (*Brice* v. *Barstow,* 9 *Mass. R.* 45. *Green* v. *Kemp,* 13 *Id.* 515. *French* v. *Shotwell,* 5 *John. Ch. R.* 555. 1 *Leon.* 307. 2 *Ball & Beat.* 98.) The purchaser of an equity of redemption which is subject to a mortgage, is bound in conscience to pay off the mortgage. This is a fundamental principle of equity. The judgment of Van Horne was not a lien, and gave him no right to set up the defence of usury.

*S. A. Foot,* for the defendants. Van Horne being liable to the defendant Smith on his covenants of warranty, it is competent for him to set up the defence of usury. Ditmas made the loan himself from the complainant. The purchase of the Brundage mortgage was made by Ditmas only. The loan by the complainant to Ditmas is therefore tainted with usury. Smith throws himself upon the covenants in his deed. An usurious mortgage is void as to the mortgagor, and all those who acquire his estate. (*Green* v. *Kemp,* 13 *Mass. R.* 515. 7 *Bacon's Abr. tit. Usury,* E. P. 202. 1 *Leon.* 307, 427. 4 *Peters' R.* 229. 10 *Wheaton,* 158. 5 *John. Ch. Rep.* 122.) Where the suit is on the usurious mortgage itself, and there is no new contract, the objection of usury can always be taken.

The rule is the same in equity and at law. If Van Horne is a necessary party, he can clearly set up the defence of usury.

THE CHANCELLOR. If the decree of the vice chancellor in this case was right in other respects, it was clearly wrong in requiring the complainant, upon redeeming under the valid mortgage, to pay to the adverse party the costs of the statute foreclosure. In the case of *Benedict* v. *Gilman*, (4 *Paige's R.* 58,) this court decided that the purchaser, under the statute foreclosure, was *only entitled to the amount due on the mort-gage* under which he purchased; and that the subsequent encumbrancer, coming to redeem, was not bound to pay the costs of a proceeding which as to his rights was wholly inoperative. The effect of a statute foreclosure is to transfer to the purchaser the rights of the mortgagee, so far as he has any claim or interest in the mortgaged premises for the security of his debt, and also to transfer to him so much of the equity of redemption as was not bound by the lien of a junior mortgage or judgment. The title which Bacon acquired in this case, under the sale to him, was therefore precisely the same *as if he had taken an assignment of Watson's mort-gage,* and a deed from Ditmas and wife of all their interest in the premises; subject of course to the right of any intermediate encumbrancer by mortgage or judgment, to redeem the premises by the payment of the amount due on the Watson mortgage at the time of the sale, with the interest thereon, if the legal claims of such subsequent encumbrancers were not paid.

The purchase of the premises from Bacon, by the defendant Van Horne, and his subsequent conveyance to Smith, with covenants of warranty, operated as a release or extinguishment of Van Horne's right to redeem by virtue of his judgment against Ditmas; so that Smith had the whole legal and equitable title and interest in the premises, subject only to the complainant's right to redeem if his intermediate liens were not paid. From the view therefore which I have taken of other points in this case, in connection with this fact, it is not necessary that I should express any definitive opinion upon the question whether the testi-

mony showed the $590 mortgage to be usurious. I am inclined to think, however, if the testimony of Kline is to be relied upon as showing the real nature of the transaction, that it was not a case of usury. It appears that Brundage held a mortgage upon the premises for rising of $1200, which was not yet due, and that being in great want of money, he was willing to part with his mortgage for about one half of the amount which was to become due thereon. The substance of the agreement between Vroom and Ditmas was, that the former should furnish the means to buy in that mortgage, and take an assignment thereof to himself; and that he should let Ditmas have the benefit of the discount made by Brundage, except one hundred dollars, provided Ditmas would give a new bond and mortgage on the premises, for the amount actually paid by Vroom on the purchase, and the one hundred dollars of the discount which Vroom was to retain for his own benefit. Even from the testimony of Ditmas himself, I do not understand that Brundage made this large discount as a personal favor to him. But that he made it for his own convenience, because he was pressed for money which he could not otherwise obtain. Vroom unquestionably could have purchased the mortgage for the same discount, and might have retained the whole nominal amount due thereon, for his own benefit, if he had not been willing to give his brother-in-law the principal benefit of the discount. If Vroom, therefore, had retained the original bond and mortgage, which he bought from Brundage under this agreement, and which was assigned to him for the full amount due thereon, there can be very little room to doubt that he might have retained those securities as a valid claim upon the land, to the extent of the $690 and the interest thereon. Indeed, I know of no principle either of law or of equity, which could have prevented him from enforcing the assigned mortgage against the land, to that extent. And if he had the right to do that, it would be very difficult to maintain that the subsequent discharge of the assigned securities, and the taking of a new bond and mortgage for the same sum, would be usurious; although such change of securities took place in conformity with the arrangement made between the parties at the time of the sale or transfer of the mortgage from Brundage.

Where the usurious security, on which a suit or proceeding is instituted, is a bond and mortgage, or other specialty, the defence of usury cannot be given in evidence under the general issue, or a general answer denying the complainant's right as claimed by the bill. But the defence of usury must be distinctly set up in the plea or answer of the defendant; and the terms of the usurious contract and the quantum of the usurious interest or premium must be specified, and distinctly and correctly set out. (*Comyn on Usury*, 203.) The defendant must also prove the usury as laid; and if he fails in proving the usurious contract in the way and manner in which he has charged it in his plea or answer, he must fail. (*Tate* v. *Willings*, 3 *Durn. & East's Rep.* 538.) The contract for usury in the present case, as charged in the answer of the defendant Van Horne, is materially different from the contract proved by Kline and Ditmas, even if the contract as testified to by them is to be deemed usurious. A more substantial objection, however, to such a defence in the present case is, that Smith, the owner of the land upon which the complainant claims an equity of redemption by virtue of his mortgage, has not set up the defence of usury, or even alluded to it in his answer. He cannot therefore object to the complainant's mortgage on that ground, or be benefitted by the defence set up in the answer of a defendant who had no interest or subsisting lien upon the mortgaged premises, and against whom the complainant had no legal or equitable claim. Although Van Horne had conveyed to Smith with warranty, that did not authorize the latter to insist upon a defence, under the answer of a co-defendant, which he had not thought proper to suggest or to put in issue by his own answer. I presume Van Horne was made a party, upon the supposition that his judgment against Ditmas was a subsisting lien upon the equity of redemption, and that if the complainant redeemed from Smith, Van Horne would have the right to redeem from the complainant. But, as I have before said, the conveyance to Smith, with warranty, was a release or extinguishment of the lien upon the equity of redemption which was conveyed, so far as that judgment was concerned. And it was not necessary to keep the lien of the judgment in force for the pro-

tection of the rights of Smith, as he could at any time obtain a perfect title to the land by paying off the prior liens of the complainant. If the defence of usury against the $690 mortgage actually existed, and Smith was apprised of the fact before he put in his answer, he may have lost his remedy against Van Horne upon the covenants of warranty, by his neglect to set up such a defence. That is a question, however, between the defendants, with which the complainant has nothing to do; and the necessary facts are not before me to enable the court now to settle the rights of the defendants as between themselves. That part of the decree of the vice chancellor which adjudges the mortgage for $690 to be usurious and void and that the mortgaged premises are exempt and released from the same, is therefore erroneous and must be reversed. The decree was also erroneous in directing the account to be taken between the complainant and Van Horne as to what was due upon the Watson mortgage. Under the statute foreclosure, and the several conveyances which have been made under the same, whatever was due upon that mortgage passed to Smith; and it now belongs to his heirs and devisees as the owners of his real estate. For every purpose, except as to the right of the complainant to redeem if his mortgages are not paid, the original debt to Watson was merged in the real estate, by the statute foreclosure; and passed as real estate to the subsequent grantees, and was transmitted to the heirs or devisees of Smith upon his death. And if the complainant redeems, they alone are entitled to any portion of the redemption money. The complainant has a right to off-set, against the amount due on the Watson mortgage, the rents and profit of the premises since the conveyance thereof to Smith, after deducting from those rents and profits the present value of any permanent improvements made upon the lands by Smith, or those claiming under him, before they had notice of the complainant's intention to redeem the premises under his mortgages. And if the amount due on the Watson mortgage has been fully paid, and the value of the mortgaged premises is not sufficient to pay the amount due on the complainant's mortgages, including the interest thereon, the estate of Smith, in the hands of his personal representatives, is liable for the surplus of the rents and profits received by

1834.

Vroom
v.
Ditmas.

Smith in his lifetime, after his refusal to permit the complainant to redeem. His devisees or heirs, who have received the rents and profits since his death, are also liable, to the extent of the rents and profits received by them.

As a general rule, a party coming into this court to redeem pays costs to the defendant, although he succeeds in obtaining the relief asked for, unless the defendant has improperly resisted his claim; in which latter case the defendant will not only be refused his costs, but may be compelled to pay costs to the complainant, in the discretion of the court. In this case, it is pretty evident that the defendant Van Horne intended to take advantage of the sale under the statute foreclosure, supposing that he could thereby overreach and defeat the lien of both of the complainant's mortgages. And if he had not parted with all his interest in the land at the time of the formal application to redeem, I should probably have considered his refusal to do justice to the complainant a sufficient reason for charging him with the costs, to which the complainant has been unnecessarily and improperly subjected. But as he had parted with all his interest in the premises before the commencement of the present suit, I can do no more than to leave him, where he is placed by the decree of the vice 'chancellor, to pay his own costs in the suit. As he has not appealed from the decree, I cannot award costs to him, against the complainant, or order the bill to be dismissed as to him, although he does not appear to have been a necessary party to the bill to redeem. The defendant Smith was in a different situation from Van Horne, as he had purchased the premises at their full value, or nearly so, supposing that he was obtaining a perfect title thereto under the conveyance from Van Horne; and he could not permit the complainant to redeem, except under a decree of the court, without impairing his rights against his grantor upon the covenants of warranty. The vice chancellor was therefore right in not charging his representatives with costs.

The decree of the vice chancellor must be modified so as to declare that the two mortgages of the complainant are a lien upon the equity of redemption, notwithstanding the statute foreclosure, and that he is entitled to redeem unless the pres-

1834.

Vroom
v.
Ditmas.

ent owners of the premises shall elect to pay off and satisfy the amount due on those mortgages. It must be referred to a master residing in the county of Seneca, to take an account of what is due to the complainant for principal and interest on his two mortgages, and also to ascertain whether any thing is due upon the Watson mortgage, over and above the rents and profits of the premises since the conveyance thereof to Smith, in February, 1822 ; and if the Watson mortgage and interest have been fully paid by such rents and profits, the master, if requested by the complainant, is also to take an account against the executors of Smith of the surplus rents and profits, if any, received by their testator in his lifetime, after the application to him by the complainant to redeem ; and also an account against such of the defendants as became entitled to the premises upon the death of Smith, as his heirs or devisees, for the rents and profits after that time. And the master is to deduct from the rents and profits the present value of any permanent and beneficial improvements made upon the premises by Smith, or those claiming under him, previous to the application of the complainant to redeem, and also the expenses of ordinary repairs. The master is also to allow interest as shall be equitable, in taking such account. If he is requested by the complainant to take an account against the executors and the heirs or devisees of Smith, as above directed, he is to make a separate report of the amount due to the complainant on his mortgages, and the amount, if any, which remains due upon the Watson mortgage over and above the rents and profits of the premises. And upon the coming in and confirmation of the said separate report, or of the general report, in case no such separate report is made, if the owners of the premises do not, within twenty days thereafter, give to the solicitor of the complainant a written stipulation to pay off the amount due to the complainant on his two mortgages, with the interest thereon, and actually pay the same within sixty days thereafter, then the complainant, upon paying the amount, if any, which is reported due on the Watson mortgage, may have a sale of the premises by a master, upon the usual notice, and with the usual directions for the delivery of the possession upon the production of the master's deed. And

out of the proceeds of such sale, the master is to refund to the complainant the amount, if any, which has been paid by him for the redemption of the Watson mortgage, and the amount due upon his two mortgages, with the interest thereon, and to bring the surplus, if any, into court ; or if there is a deficiency, he is to report the same to the court. All further questions and directions are to be reserved until the coming in and confirmation of the said several reports ; together with all questions of costs not before disposed of, including the costs of this appeal and of all subsequent proceedings in this suit. The decree also is to be without prejudice to the rights of the heirs or devisees or other representatives of Smith, as against Van Horne, under the covenants of warranty, if any such rights exist.