NEEFUS *v.* VANDERVEER and others.

WHERE one having a large mortgage on a farm, payable at a distant period with six per cent. interest, at the request of the mortgagor, who had laid out the farm in town lots for sale, cancelled such mortgage and received in lieu of it, thirteen separate mortgages for the same aggregate amount, on thirteen distinct portions of the whole farm, payable when the original mortgage was to be paid, with interest at seven per cent.; and at the same time received from the mortgagor five hundred dollars for granting the accommodation; it was *held*, that the transaction was not usurious.

The advantages proposed to himself by the mortgagor, and the probable inconvenience and hazard to the mortgagee in the exchange of the securities, constituted the consideration for the payment; and there was no loan or forbearance in the case.

November 8, 1845; February 6, 1846.

THE bill in this cause was filed by Michael Neefus on the 12th of November, 1844. It stated that on the first day of May, 1835, the defendant, A. Vanderveer, executed a mortgage for $15,300, on one hundred acres of land in Flatbush in the county of Kings, to Michael and John Neefus. The mortgage was given for a part of the purchase money, and was payable five years from its date, with interest at six per cent., semi-annually. That John Neefus soon after assigned his interest in the mortgage to Michael N., the complainant. That in October, 1836, on the application of Vanderveer, who had divided the premises into blocks for the purpose of selling them in small parcels; the complainant cancelled the mortgage of $15,300, and accepted in lieu of it, thirteen several mortgages of Vanderveer, on as many distinct portions of the premises, with his bonds accompanying the same, payable with interest at seven per cent., half-yearly; such mortgages in the aggregate amounting to $15,300. At the same time, one C. Bennet, who held a mortgage on the entire hundred acres for $4700, prior to the complainants, cancelled that mortgage, and received of Vanderveer thirteen several mortgages on the same distinct portions of the premises, for the aggregate amount, which were recorded so as to be prior to the complainant's thirteen mortgages respectively.

The bill prayed a foreclosure of two of the mortgages so exe-cuted to the complainant in October, 1836.

The answer of Vanderveer and wife stated, that although the complainant when applied to, admitted that the portion of mort-gage proposed for each section of the land, was the just and fair proportion of the whole original mortgage, and would furnish to him as adequate a security for the whole debt as he then held ; yet he would not grant the accommodation of subdividing the mortgage, unless in addition to the increase of the rate of interest to seven per cent., Vanderveer would pay to him in cash the sum of five hundred dollars for the loan and forbearance of the $15,300, by way .of usurious interest.    And that Vanderveer was finally forced and obliged to agree to pay seven per cent. per annum, and the additional sum of $500, for such new loan and forbearance.    That a corrupt agreement was thereupon made between the parties, embracing those terms, the new mort-gages being payable at the time in the original mortgage speci-fied.    That Vanderveer paid to the complainant the $500, so agreed upon, upon which he cancelled the original mortgage and received the thirteen new mortgages for the same aggregate amount.    The answer then alleged that the new mortgages and the $500, were given for the loan and forbearance of the prin-cipal sum secured by the original mortgage, and that the trans-action was usurious, and the new mortgages void.

The defendants proved that Vanderveer gave his note for $500, to the complainant, in consideration of the latter's dividing the debt into thirteen separate mortgages on as many distinct portions of the property ; and that the note was paid.    The wit-ness stated that the complainant made many objections to splitting up his demand ; among others, the greater labor and perplexity of collecting and keeping proper accounts of the interest, the irregularities in its payment, and the danger of ultimate loss of parts of the principal of some of the mortgages.    It appeared that Vanderveer's object, was to be enabled to sell portions of the land mortgaged in small parcels, which, he could not effect so long as they were all incumbered by so large a mortgage.    A map was introduced, showing his subdivision of the land into numerous blocks, with intersecting streets and avenues, laying

it all out as a village plat; and the new mortgages were given in accordance with these subdivisions.

It appeared by the original mortgage that the property was therein bounded and described as a farm.

*J. A. Lott,* for the complainant.

*D. B. Tallmadge,* for the defendants Vanderveer and wife.

*H. C. Murphy,* for C. Bennet.

THE ASSISTANT VICE-CHANCELLOR.—The usury as it is alleged in the answer, is quite incomprehensible. Neefus held a mortgage for $15,300, payable May 1, 1840, with annual interest at six per cent. In October, 1836, he relinquished that mortgage, taking in lieu of it, thirteen mortgages on distinct parcels of the same premises, for the aggregate sum of $15,300, payable on the same 1st of May, 1840, with interest annually, at seven per cent.; and the answer gravely asserts, that for this new loan and forbearance, the mortgagor paid to Neefus $500. The statement in effect is, that the mortgagor raised the rate of interest from six to seven per cent. on a mortgage which had nearly four years to run, and paid $500, for the forbearance, when there was not a day's forbearance given. The answer itself, shows to my satisfaction, that the forbearance of the debt, was not the real consideration for the payment of the $500.

It is however stated in the bill, and so is the proof so far as it respects the two mortgages now in suit, that the new mortgages were made payable on the 1st of September, 1840; and as matter of evidence, the defendants are perhaps entitled to insist that their answer is erroneous. But they encounter another serious difficulty, for this evidence does not sustain the agreement as it is set forth in the answer; and the rule is very strict, in equity as well as at law, that in pleading an usurious agreement, its terms must be distinctly stated, and it must be proved as it is alleged. (*Smith* v. *Brush,* 8 Johns. 84; *Vroom* v. *Ditmars,* 4

Paige, 526 ; *New Orleans Gas Light and Banking Company* v. *Dudley*, 8 ibid. 452.(a)

If the answer had been correct, as to the time of payment inserted in the new mortgages, the testimony fails utterly in supporting the alleged usury. The only witness sworn, so far from proving that there was to be any extension of time or forbearance says his opinion is that the principal was to be made payable at the same time, with the old mortgage. He shows not only that there was no agreement for an extension, but there was no negotiation for any thing of the kind. It was not treated of, or mentioned. It was not the subject of the mortgagor's application, or of the contract which ensued. How the 1st of September, 1840, came be inserted, is not shown ; but both the answer and the evidence prove, that it was not a part of the contract on which the $500 was paid.

The evidence shows the nature of the transaction, and for what consideration that payment was made.

The mortgagor wanted to lay out this farm into town lots, and it was obvious, that a large mortgage covering the whole farm, would seriously interfere with the sale of such lots. He declared to the mortgagee, what in this point of view was plain enough, that it would be a material advantage *to him, to have* separate mortgages given on the sections which he proposed to lay out and sell.

It was equally obvious, that this scheme was not to work any advantage to the mortgagee. It was certain to occasion him inconvenience to some extent, quite likely to disappoint him in the punctual payment of the debt, and might possibly lead to actual loss. Thus he had a large security, the principal payable at one time, and the interest in a single annual sum. By taking thirteen mortgages, he would have to keep as many different accounts of the interest, and principal. The lots were to be sold subject to the mortgages, and it was extremely improbable, that thirteen different debtors would be punctual at all times, in paying their interest and principal. Then as to his security, errors

---

(a) And *Rowe* v. *Phillips*, 2 Sand. Ch. R. 14.

of judgment might be made in the apportionment, as to the relative value of the different subdivisions ; in the division, the farm was to be cut up by streets and avenues, and by the new mortgages, the land included within the streets was virtually ceded to the public use ; the scheme for selling it in lots, might prove a partial failure ; and in the end the mortgagee might have to take the least desirable sections, in payment of the mortgages charged on them, and so detached, that they would not be valuable for farming, and not worth the amount of the mortgages.

For the anticipated advantages to himself, and the disadvantages to the mortgagee, the mortgagor offered and agreed to pay $500, in order to have the mortgage for $15,300, divided up into thirteen separate mortgages, on distinct parcels of land.

The evidence is positive, that this was the consideration for the $500, and I see nothing unreasonable in it, and no color for calling it usury.

There is another objection to these mortgages, on the score of usury, viz. that although given on the 15th of October, 1836, and the old mortgage then cancelled, they were dated on the first of September, thereby including one per cent. more of interest for the intervening time, than was due on the old mortgage on the day of its cancellation.

It is a perfect answer to this, that the defendants sets up no corrupt or usurious agreement in respect of it, in their answer.

The discharge of the old mortgage, corresponds in date, with the mortgages in question ; but it is needless to speculate on the explanations which might have been given on this point, if it had been put in issue by the pleadings.

The complainant is entitled to the usual decree for a foreclosure and sale.