The Farmers Loan and Trust Company v. Perry.

THE FARMERS LOAN AND TRUST COMPANY *v.* PERRY
and others.

A corporation was created by a statute, with power to make life and fire insuran-
ces, grant annuities, and to make loans and invest its capital on bonds and
mortgages ; and the last section declared that the act should expire at the end of
fifteen years, except as to insurances on lives, and the granting of annuities. By
a subsequent statute, passed at the same session, the corporation was authorized
to receive property of all kinds in trust, and to execute trusts in the same man-
ner and to the same extent, as any trustees could lawfully do ; and the corporation
was directed to convert trust property and invest the same in stocks, or in bonds
and mortgages. It also provided for a large increase of the capital stock of the
company. A statute passed fourteen years afterwards, classified the directors,
and limited the amount of its trusts, to five millions of dollars. Neither of the
acts subsequent to the first, contained any limitation as to time.—*Held,* that the
charter was perpetual. That the limitation to fifteen years, did not apply to the
life insurance, annuity, or trust powers, conferred on the company. And that it
had the power to loan money on bond and mortgage, after the fifteen years
expired.
In respect of either of the three principal purposes for which the corporation ex-
isted, it was authorized to loan money on bond and mortgage.
It is not incumbent on a corporation enforcing a bond and mortgage, to show that
it arose from some of its lawful pursuits.
The charter of a corporation prohibited its taking mortgages payable in a shorter
time than one year, and the interest to be payable annually. On making a loan
in July, the mortgage bore date eighteen days before the money was advanced,
and by its terms was payable in one year from date, with interest to be paid
yearly, on the first day of November in each year.—*Held,* that the mortgage was
valid. The money could not be collected in less than a year from the date of
the loan, that being the delivery and so the *date* of the mortgage.
*Held* also, that the statute regulating the time of payment, is to be deemed a part
of the contract.
*Held* also, as to the interest, that the words " first day of November," should be
rejected as surplusage, so as to give effect to the word " yearly," and thus render
the mortgage operative.
Where a party setting up the defence of usury, alleged that certain bonds or evi-
dences of debt, were advanced by the lender, and the proof showed that he ad-
vanced cash, the variance was held fatal.
December 18, 1845 ; March 14, 1846.

THIS was a bill to foreclose two mortgages executed by P. H.
Perry and wife to the complainants, for securing $9000 ; one

on lands in Auburn, the other on lands in Aurelius, in the county of Cayuga. Both mortgages were dated June 26th, 1838; one was recorded the same day, and the other on the 19th of July, 1838. The answer of C. B. Perry, the owner of the equity of redemption, set forth among other things, that the bond and mortgages were delivered on the 14th of July, 1838, when the consideration, (which, it was alleged, consisted of certain bonds, or evidences of debt of the company,) was advanced; although the bond and mortgages drew interest from June 26th. That therefore more than seven per cent. interest was reserved and taken, and the mortgages were usurious. That, by the second section of the charter of the complainants, it is enacted as follows: " That the said corporation shall have authority to make loans on the security of bonds and mortgages, or conveyances of improved farms, houses, manufactories, or other buildings, or on any other real estate." And that by the third section of the same act, it is amongst other things, enacted, " That any such loans on bonds and mortgages, or other securities on real estate, shall not be made payable in a shorter time than one year, and the interest payable annually; and the said corporation shall not foreclose any such mortgages or securities, until after the expiration of five years after the date of such mortgage. *Provided,* the interest thereon is punctually paid." That by the terms of the mortgages in question, the principal is made payable in a shorter time than one year from the time the pretended loan thereon was made; and the interest was required to be paid on the first of November next ensuing its date, and if it remained unpaid for thirty days, the whole principal thereupon became due. That the bond and mortgages were therefore taken and received by the company, contrary to the provisions of their charter; the company had no power or authority to receive the same, and they are utterly void in their hands, and cannot be enforced.

That by the twentieth and last section of the act, entitled "An act to incorporate The Farmers Fire Insurance and Loan Company," passed February 28th, 1822, and which is the same act by which The Farmers Loan and Trust Company was incorporated, it is enacted as follows: " And be it further enacted, that this act shall expire at the end of fifteen years from the time

of its passage, except as to insurances upon lives, and of the granting of annuities. *Provided*, that all contracts previously made, shall be binding and obligatory." The defendant insisted that the existence of the complainants' incorporation ceased, and its corporate powers became and were extinct, except for the purposes in the last above recited section stated, and the corporation had not on the day of the date of the bond and mortgages, or at any time afterwards, any power or authority whatever, to loan monies or evidences of debt, or to purchase bonds and mortgages, or engage in any business whatever, except as authorized by the last above recited section, either by its original charter, or by any act amending the same, or by any law of this state. For this reason also, the defendant insisted the bond and mortgages were absolutely null and void, in the hands of the complainants.

The answer set forth a prior mortgage on the lands in Aurelius, which had been assigned to, and was held by the defendant.

The defendants, P. H. Perry and wife, put in an answer and disclaimer. The cause was heard on the pleadings and proofs.

The facts stated in C. B. Perry's answer, were admitted or proved, except as to the consideration of the *mortgages*, as to which it was proved to have been paid in the check of the company, on the 14th of July, 1838.

*E. H. Ely*, for the complainants, made the following points:

I. The defendants are estopped from denying the powers of the complainants to make loans upon bond and mortgage, they having been parties to the contract. (*Welland Canal Co. v. Hathaway*, 8 Wend. 483.)

II. The charter of the Farmers Loan and Trust Company, by the original act of incorporation, and the acts amending the same, for all purposes of receiving, taking and executing any and all trusts, in the same manner, and to the same extent, as any trustee or trustees might or could lawfully do, and as to insurances upon lives, and of the granting of annuities, is unlimited and perpetual. (Act of incorporation, Laws of 1822, p. 47, ch. 50. Acts relating to, or amending the same, Laws of 1822, p. 254, ch. 240; Laws of 1836, p. 281, ch. 210.)

III. The power of this corporation, in regard to the investment of its funds as trustees, is unlimited ; only with this restriction, that the mode must be adopted in good faith, for the sole purpose of investments, and not with the view of carrying on any banking operation, or any traffic in stocks or goods, wares, and merchandise.

As trustees, they were bound to put out their money on mortgage. (1 J. C. R. 527, 620 ; 4 ibid. 619.)

IV. The power of this corporation, in regard to the investment of its capital, is general, except so far as it is in terms restricted by the original act of incorporation.

V. The bonds and mortgages are not, nor are any or either of them, void for usury, or for any other cause.

*David Wright*, for the defendant, C. B. Perry.

*First.* The bond and mortgage were executed, delivered and received, upon a usurious contract, and are therefore utterly void. Because, the loan was made July 14, 1838, and interest reserved from June 26, 1838.

*Second.* The principal secured to be paid by the bond and mortgage, is payable in less than one year from the time the loan was made, which is contrary to the express provisions of their charter. (Laws of 1822, p. 47, §§ 2 and 3 ; *The North River Insurance Co.* v. *Lawrence*, 3 Wend. 482 ; *The Life and Fire Insurance Co.* v. *The Mechanics Fire Insurance Co. of N. Y.*, 7 id. 31 ; *Edwards* v. *Farmers Fire Insurance and Loan Co.*, 21 Wend. 492 ; *Safford* v. *Wyckoff*, 4 Hill, 447–8—per Chancellor ; *Head & Amory* v. *The Providence Insurance Co.*, 2 Cranch, 168 ; *N. Y. Fire Insurance Co.* v. *Ely*, 5 Conn. Rep. 560 ; *Fox* v. *Horah*, 1 Iredell's Eq. Rep. 358.)

*Third.* The interest upon this bond and mortgage is payable before the end of the year after the date thereof, and also before the end of the year after the time of the loan.

The bond and mortgage bear date June 26, 1838, the loan was in fact made July 14, 1838. Interest is made payable Nov. 1, 1838, less than four months from date of the loan, and less than five months from the date of the bond and mortgage, and annually thereafter. (Same authorities as to last point.)

*Fourth.* The bond and mortgage were received, and the loan was made, more than fifteen years after the passage of the act chartering this company, to which it was limited.

The act was passed February 28, 1822, and the loan made July 14, 1838 ; more than sixteen years.

*Fifth.* If complainants' mortgage is good, it must be taken subject to the lien of the mortgage executed by Cook & Maxwell to Vowells, which is elder in date and lien.

We do not deny that the company was perpetual, but we deny that it had power to loan on bond and mortgage in 1838. The only powers left of those in the original charter, were to insure lives and grant annuities. There was no necessity for any power to loan on mortgage after the fifteen years. All its monies might be expended in annuities. Inconvenience furnishes no argument for the exercise of the power. The question is, was the power conferred ? There has been no act since its charter which renews or enlarges the powers that by the last section were to cease in fifteen years. The act of April 17th, 1822, does not affect this part of the case, and that of 1836 merely changes the corporate name and classifies the directors. It does not extend the power to loan on mortgage beyond what the original act gave, and it expressly provides against any extension of the company's power by implication. Directors were as necessary for the business of life insurance and annuities, as for loans on mortgage.

If the authority to make such loans, was not confined to fifteen years, what power in its charter was limited? If the complainants are right in this, none of their powers have expired, not even that of fire insurance.

This corporation has not all the powers of ordinary trustees. It has none except such as are expressly given by its charter. We deny that this loan was made by them as trustees, out of trust funds. If the fact were so, the complainants must prove it; but they have not alleged it in the bill. The provision in the act of 1836, as to counsel fees on examining titles &c., cannot be construed to confer this power ; for the company then had ten months left of the fifteen years in which they could make such loans, and the provision had its full operation during that time. (See *Fox* v. *Horah,* before cited.)

*Fifth.* If the complainants mortgage is good, it must be taken subject to the lien of the mortgage, held by the defendant C. B. Perry, which is elder in date and prior in lien.

In behalf of the defendants, P. H. Perry and wife, the counsel insisted,

*First.* The complainants should not have made them parties, they having parted with their interest long before the commencement of this suit ; and

*Second.* Having been made parties, and having disclaimed, they are entitled to their costs.

*W. Curtis Noyes,* in reply. *First.* The estoppel for which we contend, is not that we are not to prove the complainants a corporation, or that making a contract with them, is evidence of their corporate existence ; but that when the corporate existence is shown, it is evidence of their right to make such a contract, and so far is an estoppel on the contracting party. It admits the legal capacity of the corporation to that extent. Otherwise great frauds might be committed against corporations. The company is bound by the same admission, the estoppel being mutual and reciprocal. (14 Johns. 238, *Dutchess Manuf. Co.* v. *Davis ; Bank of Michigan* v. *Williams,* 5 Wend. 478 ; *Welland Canal Co.* v. *Hathaway,* 8 ibid. 480 ; 2 Cowen, 664, 678 ; *State of Indiana* v. *Woram,* 6 Hill, 33 ; *Commercial Bank of Manchester* v. *Nowlan,* 7 Howard's R., Miss. 508.)

Where the objection is a mere want of authority, as in this case the alleged want of power to take a mortgage, both parties to the contract are precluded from insisting on the objection.

It is otherwise where the act is contrary to law, or is prohibited.

The complainants had the power to loan on bond and mortgage in 1838. Its name, a *Loan Company* shows that. As a corporation, fully created by the first section of the charter, it has the power to take mortgages. It is given expressly by the second and fourth sections. And the right to make loans, is incidental to the three principal powers conferred on the corporation. A company having power to grant annuities and insure lives, ne-

cessarily must loan its fund, and keep it invested at interest. This is the basis of its legitimate operations.

The power conferred by the act of April 17, 1822, to receive money as trustees, and to invest in stocks, or bonds and mortgages, gives ample authority.

. The limit to fifteen years in the previous act, has no effect upon this subsequent law.

Then the act of 1836, striking out fire insurance from its corporate name, continuing it as a loan company, limiting its trusts to five millions of dollars ; fully illustrates the powers for which we contend, in respect of loans and investments. The then Attorney General, Mr. Beardsley, reported to the Legislature in 1836, that the charter of the complainants was perpetual.

Vice-Chancellor McCoun decided in a case between T. Clowes and the complainants, that they had in 1838, the power to loan on bond and mortgage. And the same was held by Vice-Chancellor Whittlesey, in the eighth circuit, in the case of Carroll against the present complainants.

. *Second.* As to the alleged usury. It is not set up in the answer as it is now relied upon. (8 Paige, 452.) But there was no usury at all. The securities were prepared in anticipation of the loan, and necessarily bore date before it could be completed. They took effect on the 14th of July, 1838, when the loan was actually made. (See 8 Wend. 533.) The interest then commenced.

*Third.* As to the bond and mortgages being payable in less than a year, and the interest also, the answer states that the loan was payable in a year, with interest yearly. That is the true construction. (7 Howard, 508 ; 8 Wend. 533.) Rejecting the words " first of November," which are repugnant to the words " payable yearly," and the statute is complied with.

. The court should regard the statute as part of the contract, and controlling any thing contrary to the charter. (*Farmers Loan Co.* v. *Edwards*, 26 Wend. 541.) And in this respect the charter was directory ; no penalty is added to the prohibition.

C. B. Perry signed our bond, and is bound to pay any deficiency. He cannot therefore set up a prior mortgage to defeat our debt. The court may impound the money payable to

him on that mortgage, to answer the debt he owes the complainants.

THE ASSISTANT VICE-CHANCELLOR.—The objection to the securities in question, on the ground of usury, as it was taken at the hearing, is not sufficiently alleged in the answer. It is there stated, that certain bonds or evidences of debt, were issued by the complainants, as the consideration of the mortgages, and that the same were not issued or delivered to P. H. Perry, until the 14th day of July, 1838, whereas the bond and mortgages reserved interest from June 26, 1838, and the interest commenced accruing thereon at that date; wherefore, the answer insists, that the bond and mortgages were and are void for usury.

The evidence does not sustain this allegation at all. It is however, proved that the loan was paid to P. H. Perry, in the complainants check dated July 14, 1838, and delivered to him on that day; and it is claimed that this renders the securities usurious.

Whether it does or not, is not for me to determine on these pleadings. The testimony does not apply to the issue. (*Vroom* v. *Ditmars*, 4 Paige, 526; *New Orleans Gas Light and Banking Company* v. *Dudley*, 8 ibid. 452.)

The remaining objections are founded upon the charter of the complainants, and the acts amending the same.

And first, it is insisted that when these mortgages were executed, the complainants had no power whatever to loan on bond and mortgage, and that such power ceased at the end of fifteen years from the passage of the act of incorporation.

It is not necessary for me to recapitulate the provisions of the charter and the subsequent acts. I find that this subject was considered by the Vice-Chancellor of the eighth circuit in *Carroll* v. *The Farmers Loan and Trust Company*, on a motion to dissolve the injunction, decided August 17, 1844. In his opinion delivered on that occasion, he held that the corporation created by the act of February 28, 1822, incorporating the company, is perpetual. That although by the last section, the act itself was to expire at the end of fifteen years after its passage, yet the power of insuring lives and granting annuities was excepted, and

was coeval with the duration of the corporation.. And that the act of April 17, 1822, enabling the company to receive property in trust, and to execute trusts, conferred new powers upon the company, which were not limited to any period of time, and continued after the termination of the fifteen years mentioned in the original act.

I fully concur in these conclusions, and I need not go over the ground which has been so ably occupied by the Vice-Chancellor of the eighth.

Therefore when the mortgages in question were executed, the Farmers Loan and Trust Company, were authorized by law to effect insurances upon a life or lives, to grant annuities on lives or dependent on any life, and to perform and execute trusts, in the same manner, and to the same extent, as any trustee might lawfully do.

For either of these purposes, I think they were authorized to loan money on bond and mortgage.

I have heretofore held that a corporation created for a limited and specific purpose, as this company was, has power to make all contracts which are necessary and usual in the course of the business it transacts, as means to enable it to effect such purpose, unless expressly prohibited by law, or the provisions of its charter. (*Barry* v. *Merchants Exchange Company*, 1 Sandford's C. R. 280.) In order to insure lives, or grant annuities, with safety to the parties interested, it is indispensable for a company to have a sufficient fund to meet the accruing losses which are inevitable in the one case, and to pay the annual sums stipulated in the other. The principal part of such fund must necessarily be invested, not merely for the advantage of the company itself, and its enhanced ability to meet its engagements, by reason of the increase from the interest or dividends; but also for the security of the persons holding its engagements. There is no better or more unexceptionable investment, than that made upon bond and mortgage. There is no statute forbidding this company thus to invest its legitimate means, and it may be added that unless the company can put out its annuity and life insurance fund in this mode, it cannot invest the fund at all. The same objection may be made to loaning it on stocks, or personal

security, or investing it in any other mode, as is urged against loaning it on mortgage.

Under the power of the company to execute trusts, there is no doubt of its power to loan on mortgage. Indeed with the exception of government stocks, (by which I mean stocks of this state or the United States,) there is no other security upon which a trustee can make loans in the proper discharge of his duty, according to the principles of equity as established for more than a century before this corporation was created.

The investment of trust funds on bond and mortgage, is distinctly recognized in the act of April 17, 1822, and is alluded to in the act of April 30, 1836. Probably no express provision was made in regard to it, because the settled law required the company as trustees, to invest in stocks or on real estate security.

By the act last cited, the company was limited in the amount of its trusts, to five millions of dollars; which shows that the legislature expected it to deal very largely in this capacity as trustee; and the omission to point out any special class of investments, is conclusive that it was intended to place the company on the same footing in this respect, as individual trustees, having the same capacity and the same liabilities.

It was said at the hearing, that it was incumbent on the complainants, to prove that this loan was made out of trust funds, to sustain the mortgages, even if they were empowered to loan in this mode. I think this would be placing the burthen of proof where it does not belong. The corporation having invested this money, it is to be presumed that it arose from some one of its lawful pursuits, until the contrary is shown.

*Second.* The defendants insist that the mortgages are illegal, because they made the principal sum payable in less than a year after the loan was made, and required the interest to be paid in less than four months.

1. In regard to the principal sum. There is no pretence that the securities were intentionally ante-dated. They were undoubtedly prepared on the day they bear date, and were delivered as soon as the mortgagor could perfect them. By their terms, the principal is payable in one year from the date thereof, and

construing the statute by its very letter, they are not "made payable in a shorter time than one year."

But I agree that the restriction in the statute, was intended for something more substantial than this construction would yield. It means that the loans on real estate shall not be called for, until the end of a year after they are made.

In giving it this effect, I think it follows that the statute does not restrict either one party or the other, from showing that the date inserted in the security, is not the real time of the transaction. The defendant proves that these securities, bearing date June 26, 1838, were delivered, and the loan was made, on the 14th day of July in the same year. Having shown that to be the true date, can he insist in the face of the statute, that it became payable before July 14, 1839 ? If he proves that "the date thereof," referred to in the bond, was really and truly a different day from that expressed in it, does he not thereby extend the year limited for payment, to the true date as thus established ?

Suppose in this case, there were no statutory restriction as to foreclosing at the end of the year, and on the 27th of June, 1839, a bill had been filed to foreclose these mortgages ; and the defendants had set up in a plea that this loan was made on the 14th of July, 1838 ? Would it not have established that the debt was not due ? I think it would, and that the statute regulating the time of payment is to be deemed a part of the contract, as if it were expressed in the bond and mortgages. Judge Cowen said this, of another provision in the same charter. (*Edwards v. Farmers Loan Co.*, 21 Wend. 483.)

In the mode in which loans on real estate are usually made, the mortgage is almost invariably dated and signed one or more days before the loan is completed. If the defendants are right in this point, the complainants must make all their mortgages payable thus, "in one year from the time of effecting this loan." The result of which will be, that without proof, the mortgage will be deemed payable in one year from its date ; and with proof of the actual date of the loan, it will be precisely, as it is in the case before me, by the connection of the statute with the condition, due in one year from the date thus proved.

Without determining what would be the consequence of the point, if it were held that these securities were made payable in contravention of the third section of the charter; I think that in respect of that provision, the words *" date hereof"* in the condition, ought to be construed to mean, what *date* properly imports, the delivery of the securities. There is much good sense in the observation of Sutherland, Justice, in *Tompkins* v. *Corwin*, (9 Cowen, 255,) that " where the justice and merits of the case are affected by the particular time when the bond or deed becomes a valid and subsisting instrument, there the time of the delivery becomes material, and may be set forth or proved by either party."

2. The interest is made payable yearly, as the same should accrue on the first day of November, in each and every year. This it is said, makes the interest payable November 1, 1838, and thus is contrary to the third section of the charter, which requires the loans to be made payable in not less than a year, " and the interest payable annually." To make the interest fall due on the first of November, 1838, the word " yearly," must be rejected as surplusage, because if payable *yearly*, no part of it could become due in four or five months. And we have as much right to reject the words " first day of November," as to reject the other limitation fixing the payment of interest. As the condition stands, it is capable of a construction which gives effect to all its words, and by which the first payment of interest would fall due on the first of November, 1839, and yearly thereafter. On the familiar principle, that where an instrument will bear two constructions, one of which will render it operative and the other void, the former should be adopted, I am bound to give to the mortgages the construction which I have just stated, rather than to enforce one which may render it illegal. On neither ground urged against the mortgages, on account of their terms of payment, is the defence established.

The mortgage to Vowles, assigned to C. B. Perry, appears to be prior to the complainant's mortgage on the lands in Aurelius, and the decree will declare its priority, if he desire to keep it on foot.

I find no evidence that Philo H. Perry and wife, were served

with the notice prescribed in the 133d rule of the court, and they are therefore entitled to their costs.

With these provisions, the complainants may take the usual decree for a reference and sale.