ALLEN, J.
Prior to the enactment of the Code of Procedure, the subject matter of this action was cognizable only by a court of equity, courts of common law having no jurisdic *196 tion to entertain a suit for the specific' performance of a contract. The cause of action was therefore within the ten years’ limitation prescribed. (2 R. S., p. 301, § 52.) The language of that section is: “Bills for relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue, and not after.” If a cause of action had ever accrued to the original vendor, the plaintiff’s assignor, and the statute of limitations had been permitted to run against it, the bar of the statute could not be avoided, and a new cause of action created, upon the same contract, by the demand of specific performance by the assignee, in 1854. The right of action, once, barred by statute, can , only be revived by the act and assent of the party to be charged. (Kelsey v. Griswold, 6 Barb., 436.) The cause of action accrued whenever the plaintiff or his assignee could'have filed a bill for the relief sought in this action. If, at any time, without further act on their part, or default or breach of duty on the part of the defendant, they could have come into a court of equity and entitled themselves to a specific performance of the contract, the statute of limitations commenced running from that time, and the lapse of the statutory period of ten years barred the action. In order to put a party in default, in the case of dependent covenants, so as to subject him to an action at law, there must be a tender of performance by the other party to the covenant or agreement, and a demand of performance on his part, and when an act is to be done requiring time for its performance, a reasonable time must be given for such performance, unless the party of whom the demand is made absolutely refuses to perform at the first demand. An action at law upon the contract, or to recover back the consideration as upon' a rescission of the contract by the act of one of the contracting parties, can only be maintained upon such technical and formal default, unless it may be in some exceptional cases, as when a party has put it out of his power to perform, so that a tender and demand would be nugatory. The rule at law is well settled by a long line of cases, some of *197 which are cited by the plaintiff’s counsel. (Hackett v. Huson 3 Wend., 249; Blood v. Goodrich, 9 id., 68; Connolly v. Pierce, 7 id., 129; Fuller v. Hubbard, 6 Cow., 13; Lutweller v. Linnell, 12 Barb., 512.) The same principle applies when equitable relief is sought, on the alleged ground of a rescission of the contract by the act or default of one of the parties to it. (Brunell v. Jackson, 5 Seld., 535.) Wells v. Smith (2 Ed. Ch. R., 78; affirmed 7 Paige, 22), turned upon the construction of the contract, the question being whether time was of its essence, and it was held that it was so, and that the complainant had lost his rights under the contract, by not performing at the day. The general discussion, by the Vice-Chancellor, of the course of procedure to secure one’s rights under such a contract, has no application except to cases falling within the same category. The contract does not in this, as in the case cited, make time essential by prescribing a fixed time for its performance, and making a performance at the day, by either party, a condition precedent to the request to enforce it against the other. The agreement looks to and fixes no particular time for its performance, but imposes a present duty upon the defendant to convey the powers and privileges mentioned, whenever the plaintiff shall request. A previous demand is not, nor is any act on the part of the vendor, made necessary by the terms of the contract, to fix the liability of the defendant. -He has promised to convey generally, and is therefore bound to perform upon request; in other words, there is a present liability which may be enforced at any time. The vendor at once acquired a right to a specific performance of the contract by the vendee. When such right exists, it may be enforced in equity without a previous request or demand. The contract not making a request or demand essential to the right of the vendor to enforce performance; the law does not annex it as a condition, and it is sufficient if he offers to perform in his bill of complaint, and is able to perform at the time of the final decree. A request made by action is sufficient, and a request before action is not necessary. The distinction between an action for a specific performance in equity *198 and a suit at law for damages, for non-performance, is this, that in the latter, the right of action grows out of a breach of the contract, and a breach must exist before the commencement of the action, while in the former, the contract itself, and not a breach of it, gives the action. A demand of performance before suit brought is only important in reference to the costs of the action, and has no bearing upon the merits or the rights of the parties. But by a demand and refusal, the party liable to perform is put in the wrong and in the situation of unreasonably resisting the claim of his adversary, and is, therefore, chargeable with costs. Costs in equity are always in the discretion of the court, and whether they are granted or withheld, they are but as incidents to and no part of the relief sought. A party getting the relief asked, may be compelled to pay costs, but nevertheless his cause of áction had accrued upon the filing of the bill or the commencement of the suit. (Vroom v. Ditmas, 4 Paige, 526.) A party filing a bill for a specific performance upon an offer of performance on his part, and a demand from the other party, must make the proper offer in' his complaint; and if he is able to perform at the time of the final judgment, he is entitled to his relief, although he may not have been in a situation to perform at the time he brought his suit. (Baldwin v. Salter, 8 Paige, 473; Stevenson v. Maxwell, 2 Comst., 408.) The rule is, that the plaintiff, in actions for the specific performance of contracts, must aver and plead performance, or a readiness and willingness to perform on his part. (Walker v. Jefferrys, per V. C., 1 Hare, 352.)
It is analogous to the rule of the common law, that a note payable on demand is payable instanter, and the statute commences to run against it from its date; while, if it is payable a given time after demand, or it contains any provision showing the intent of the parties that it should not be payable until actual demand, the rule is otherwise. (Wenman v. The Mohawk Ins. Co., 13 Wend., 267.) The vendee has the right, immediately upon the execution and delivery of the contract, to apply to the court of equity for a specific performance, and the only consequence of such immediate application would have been *199 to charge him with costs; but the relief could not have been denied him, merely because the suit might have been ill-advised, hasty, and unnecessary. The cause of action thus arose, and the rule of courts of equity is, that the.cause of action or suit arises, when, and as soon as, the party has a right to apply to a court of equity for relief. (2 Story Eq. Jur., § 1521, a.) When the party entitled to a specific performance of an agreement to convey land has been in the uninterrupted possession of the premises, an objection to a decree, on account of the lapse of time, will not be sustained. (Miller v. Bear, 3 Paige, 466.) The possession saves the action, and makes the case an exception to the rule which controls other executory contracts. The question of adverse possession, as to which several cases are cited by counsel, is not in the case. It is not an action in rem, to secure the realty or its possession, but is an ordinary equitable action to enforce a simple executory contract, upon which the plaintiff and those under whom he claimed have slept upon their rights, until a statutory bar has arisen against them.
• The maxim that in equity that which is required to be done is considered as done, is invoked by the plaintiff, in aid of the action. But it is not easy to see how a court can assume a fact as accomplished at the instance of a suitor who alleges that it has not been done, and asks, as the only relief sought, .that the court may cause it to be done. It is a maxim applied for the advancement of justice, and as a protection and defence, and it would be a perversion to resort to it in avoidance of a statute of repose. (Burch v. Mahony, 1 Barb., 648; Hasbrook v. Paddock, 1 id., 635.) Had the plaintiff been in possession for twenty years, the maxim might avail him if his possession was disturbed by his vendor. (Miller v. Bear, supra.) So, too, the equitable doctrine that the vendor is the trustee for the vendee of such property from the time of the contract, and that the whole title is deemed to pass by the contract cannot give length of days to an agreement for its conveyance. When dealt with as a contract, it is subject to all the rules which apply to and control other contracts, and cannot by any pretence *200 be taken out of the operation of statutes general in their operation, and applicable to all contracts. If in equity, the title to the real property is vested, in the plaintiff either as against the defendant or third persons, the right, just so far as it has vested, will be protected whenever it is assailed. But when the plaintiff asks the aid of a court of equity to enforce the contract for a legal conveyance, he is within the statutes for the limitation of actions. The plaintiff would have the contract construed as a conveyance in presentí, an executed contract rather than as an agreement to convey in future, an existing contract. But the whole tenor of the instrument shows that it was intended by the parties as a memorandum of their agreement, and that further acts were contemplated to complete and carry it out, to wit, giving of a conveyance by the defendant, and of a mortgage for the purchase money by the vendee. The parties so construed it by their subsequent acts, and the plaintiff ratifies the construction by bringing this action. It was then an agreement by the defendant to execute upon request, and for the considerations named, a grant of an easement or servitude upon his land, which when executed would have charged the land; but until executed, the contract was preserved, binding only the defendant, and creating no charge upon the l&nd. An agreement for a lease is not a lease, or equivalent to a lease, and an agreement to create or grant an easement is not a grant or its equivalent. If the referee had found that the deed of January 19,1838, was a substituted and full performance of the contract of the defendent, accepted and acquiesced in by the vendee, the finding would, in my judgment, have been fully sustained by the evidence. But upon the ground upon which the case was decided by the referee, there was no error, and the judgment must be affirmed.
Smith, J. The referee put his decision, dismissing the plaintiff’s complaint, upon the single ground that the action was barred by the statute of limitations. The plaintiff excepted to the finding of the referee, on this question of law, and also to his decision to dismiss the complaint. If the *201 referee decided correctly, that the statute of limitations constitutes a bar to the plaintiff’s recovery, the complaint was properly dismissed; and, if he decided erroneously • upon this ground, but rendered the proper judgment, the same must be affirmed. If the plaintiff was not entitled to recover upon his whole case,— and the whole case is open to examination, when the complaint is dismissed, or a nonsuit ordered,—■ then the proper judgment was rendered; but if the referee erred in dismissing the complaint, then a reversal of the judgment should be ordered, and a new trial granted.
But I think the referee committed no error in his finding upon the questions of law, and in giving judgment that the complaint be dismissed.
The plaintiff was seeking to enforce an equitable right of action. . If he was entitled to maintain such action, he was equally entitled to institute and maintain it, at any time since the 19th of January, 1838, when the defendant executed the deed for the four and a half acres, and declined to include in the deed the privilege in controversy. At that time, the referee finds that the exclusive privilege claimed in this suit was a matter of conversation between them. Lawrence desired a conveyance of that, as well as the land. Tilson did not convey it, assigning, -as a reason, that his wife declined.
.Lawrence was thus distinctly apprised that the defendant did not intend to deed the exclusive privilege; He made a deed of the four and a half acres, omitting to convey this privilege, and stating that his wife declined to sign a deed conveying the same. Lawrence, while he stated that he intended to relinquish no rights, did in fact take the deed, and gave a bond and mortgage for the whole consideration which he afterwards paid, and immediately went into possession of the four and a half acres, and has continued to occupy the same ever since; never, that we know, even claiming the exclusive privilege afterwards, till he assigned the contract to the plaintiff, in March, 1854, sixteen years afterwards and upwards. Hot-withstanding what Lawrence said at the time, I think it a fair *202 presumption, after such a lapse of time, that he acquiesced in the refusal of the defendant to include the exclusive privilege in the deed-, and assented to receive or regard it as given in full compliance with the contract. But if this was not so, no court of equity I think, would or should ever enforce specifically such a contract, after such a delay under the circumstances of this case, independently of the defence of the statute of limitations.
Lawrence, himself, never asked or sought a conveyance of this special privilege. This action is brought by an assignee of the contract, not by a grantee of the land conveyed, who purchased it for the consideration of one hundred and fifty dollars, March 7, 1854; soon after demanded performance, and in April afterwards commenced this action. It is obviously a speculative suit. It is not the duty or practice of the courts of equity to aid speculators in the enforcement of stale demands beyond the limit of strict legal right.
It has always rested in a large degree in the discretion of the courts of equity, to grant or refuse specific performance, and it is uniformly denied when the contract is a hard one, or the circumstances of the parties or property have changed, or the party has slept upon his rights, or for any reason the claim is unconscionable or unjust, or for any reason unequitable at the time when the aid of the court is invoked. (Seymour v. Delancy, 3 Cow., 445; S. C,, 6 John. Ch., 223 ; 9 Ves., 608; Willard’s Eq., 280; and Story’s Eq., §§ 750, 751; McWilliams v. Story, 32 Barb., 194.)
The point that the right of action did not accrue till the demand made in April, 1854, is untenable. The rules applicable to the making of a demand before the commencement of a suit do not apply to equitable actions. They apply to strict legal fights. In equity the court has a discretion in respect to costs, and if an action is brought to enforce an equitable right unnecessarily and unreasonably, and without giving the defendant a fair opportunity upon request or otherwise, to allow and to satisfy the plaintiff’s claim without suit, the relief may be, and ordinarily will be, granted without costs, *203 and the court, if it thinks proper, may make the plaintiff pay the defendant’s costs. (Vroom v. Ditmas, 4 Paige, 535.) But the objection that a suit is brought without a technical demand is not available to bar an action in equity, if the plaintiff has otherwise a good cause of action. (Stevenson v. Maxwell, 2 Comst., 408; King v. Clark, 3 Paige, 77; Baldwin v. Salter, 8 id., 473.)
The statute of limitations in equity begins to run, as at law, as soon as the party has a right to apply to the proper tribunal for relief. (2 Story’s Eq., §§ 15, 21, a; Whalley v. Whalley, 1 Bligh, 1; Ang. Lim., 41.)
Certainly Lawrence might have commenced this action the next day after the delivery of the deed of the four and a half acres, which was January 19,1838, more than ten years before the commencement of this action.
The decision of the referee was clearly right upon the question, and the judgment of the court below in affirming such judgment should be affirmed, with costs.
All the judges concurring,
, Judgment affirmed.